## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAURENCE JARVIK,          :

                      :

      Plaintiff,         :      Civil Action No.:    08-1911 (RMU)

                      :

      v.              :      Re Document Nos.:   13, 17

                      :

CENTRAL INTELLIGENCE AGENCY,  :

                      :

      Defendant.       :

## <u>MEMORANDUM OPINION</u>

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR LEAVE TO FILE A *VAUGHN* DECLARATION *IN CAMERA*

## I. INTRODUCTION

The plaintiff submitted a Freedom of Information Act ("FOIA") request to the Central Intelligence Agency ("CIA") seeking to obtain "CIA reports relating to the violence [in Andijan, Uzbekistan] of May, 2005 and its aftermath, as well as subsequent trials and evacuation of refugees." The CIA refused to produce any information responsive to the plaintiff's request, claiming that the information was exempt from production under the FOIA. The matter is now before the court on the CIA's motion for summary judgment and motion requesting leave to file *in camera* a *Vaughn* declaration. For the reasons discussed below, the court grants both of the CIA's motions.

## II. FACTUAL & PROCEDURAL BACKGROUND

On February 15, 2006, the plaintiff submitted a request to the CIA for "information or records on all CIA documents about events in Andijan, Uzbekistan from 2004-2006, including any CIA reports relating to the violence of May, 2005 and its aftermath, as well as subsequent

trials and evaluation of refugees" ("the initial request").[1]  Am. Compl. ¶ 6; Def.'s Mot. for

Summ. J. ("Def.'s Mot."), Ex. A.  A few weeks later, on March 6, 2006, the CIA responded that

it could not "process the first part of [his] request – CIA documents about events in Andijan,

Uzbekistan, from 2004-2006" due to its lack of specificity, but it offered to conduct a search for

documents responsive to "the second part of [his] request – CIA reports relating to the violence

of May 2005 and its aftermath, as well as subsequent trials and evaluation of refugees – since it

deals with a specific event."  Am. Compl. ¶ 8; Def.'s Mot., Ex. B.  The plaintiff agreed to the

CIA's proposal in a letter on March 22, 2006 ("the amended request").  Def.'s Mot., Ex. C.

     In March 2008, the plaintiff informed the CIA that he was ready to pay the required fees

necessary to move forward with his FOIA request.  Am. Compl. ¶¶ 16-18.  After receiving no

response from the CIA, the plaintiff filed suit in this court on November 5, 2008.  Am. Compl. ¶¶

19-20.  The CIA states that it "accepted" the plaintiff's amended request on January 14, 2009.

1st Dimaio Decl. ¶ 5.  On January 15, 2009, the court granted the parties' joint motion to stay the

proceedings until May 11, 2009, in order to allow the CIA time to "provide the plaintiff with any

and all releasable CIA records responsive to his [February 15, 2006] FOIA request (as that

request was modified by the plaintiff's letter dated [March 22, 2006])."  Minute Order (January

15, 2009).

     On March 24, 2009, the CIA provided a "final response" to the plaintiff's amended

request.  *Id*., Ex. B.  The CIA explained that it had "located material which [it] had determined is

currently and properly classified and must be denied in its entirety on the basis of FOIA

---

[1]    The plaintiff sought an exemption from any fees associated with searching for and reproducing the requested information.  *Jarvik v. Cent. Intelligence Agency*, 495 F. Supp. 2d 67, 69 (D.D.C. 2007).  After the CIA denied his request, the plaintiff appealed, ultimately filing suit in this court.  *Id.* at 69-70.  This court, in a separate case, held that the plaintiff was not entitled to a fee waiver.  *Id.* at 74.

exemptions (b)(1) & (b)(3)." *Id.* The plaintiff administratively appealed this decision but did not receive a decision within the required timeframe.[2] Am. Compl. ¶¶ 26-7.

The CIA subsequently filed a motion for summary judgment, *see generally* Def.'s Mot., relying on the unclassified declaration of Ralph Dimaio, an Information Review Officer with the CIA.[3] *Id.*, 1st Dimaio Decl. The CIA also filed a motion for leave to file *in camera* a classified *Vaughn*[4] declaration by Diamio. *See* Def.'s Mot. to File Its *Vaughn* Declaration *In camera* ("Def.'s Mot. to File *In camera*"). In support of its motion to file *in camera*, the CIA filed a second unclassified declaration by Dimaio. *See* Def.'s Reply in Support of Its Mot. to File *In camera*, 2d Dimaio Decl. With the defendant's motion for summary judgment and motion for leave to file *in camera* now ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

---

[2]    If an agency fails to answer a FOIA request within twenty days, FOIA deems the requester to have constructively exhausted his administrative remedies and permits immediate judicial review. 5 U.S.C. § 552(a)(6)(C); *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)).

[3]    Unsworn declarations, subscribed by the declarant as true under penalty of perjury, may be substituted for affidavits. 28 U.S.C. § 1746; *Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *see also Casillas v. Dep't of Justice*, 672 F. Supp. 2d 45, 49 (D.D.C. 2009) (stating that "federal law expressly permits the use of declarations without notarization").

[4]    An agency claiming exemptions under FOIA must provide "an analysis sufficiently detailed" in support of any claimed exemptions. *Vaughn v. Rosen*, 484 F.2d at 820, 827 (D.C. Cir. 1973). This analysis, submitted as part of a "*Vaughn* index" or "*Vaughn* declaration," allows "the court to evaluate the legitimacy of the withholding of information without having to physically examine each of the documents on which withheld information is contained." *Dorsett v. U.S. Dep't of Treasury*, 307 F. Supp. 2d 28, 34 (D.D.C. 2004).

# III. ANALYSIS

## A. The Court Grants the Defendant Leave to File its *Vaughn* Declaration *In camera*

### 1. Legal Standard for *In Camera* Filing

District courts have "the explicit authority to conduct *in camera* reviews of agency files to determine the applicability of the claimed [FOIA] exemptions." *Quinon v. Fed. Bureau of Investigation*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (discussing Congress' 1974 amendments to FOIA, which expressly authorized *in camera* review). The court should not, however, resort to an *in camera* review as a matter of course. *Quinon*, 86 F.3d at 1227-28 (citing S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974)). Instead, the court should first provide the government with an "opportunity to establish by means of testimony or detailed [public] affidavits that the documents are clearly exempt from disclosure." *Id.* (citing S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974)). "[T]he court is to require the agency to create as full a public record as possible, concerning the nature of the documents and the justification for nondisclosure." *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1383 (D.C. Cir. 1979). But where the public affidavits are insufficiently detailed to permit meaningful review of exemption claims, "the court may accept classified affidavits [i]n camera or it may inspect the documents [i]n camera." *Hayden*, 608 F.2d at 1384.

### 2. The Defendant's *In camera* Filing of a *Vaughn* Declaration is Necessary and Appropriate

The defendant requests leave to file its *Vaughn* declaration *in camera* because it "could not provide an adequate explanation of its search and withholdings without revealing information that is classified, or that reasonably could be expected to lead to the discovery of classified information." Def.'s Mot. to File *In Camera*, at 2-3. The plaintiff argues that the defendant has

not disclosed any material whatsoever[5] and has failed to submit a sworn statement "explaining why the *Vaughn* declaration has to be classified or explaining how the release of a declaration can lead to discovery of classified information."  Pl.'s Opp to Def.'s Mot. to File *In camera* at 2. The plaintiff further argues that the adversarial process would be severely limited if this court is forced to determine whether the defendant's search of its records was adequate without the benefit of the plaintiff's analysis, which the court would not receive if it allows the *Vaughn* declaration to be filed *in camera*.  Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 3.

The defendant responds that it has, in its first unclassified declaration, "explain[ed] its search and withholdings to the greatest extent possible without disclosing either classified information or information that reasonably could be expected to lead to the disclosure of classified information."  Def.'s Reply in Support of Mot. to File *In camera* at 1; *see also id.*, 2d Dimaio Decl. ¶ 3.  The defendant explains that it cannot release a redacted version of the information because it can "neither enumerate nor describe the responsive material in any way without revealing classified information or impairing [the CIA's] functions."  *Id.*, 2d Dimaio Decl. ¶ 3.  According to the defendant, public disclosure of "the nature and type(s) of responsive material, the date(s), the amount, volume, or extent of the responsive material in this case would provide insight into how [the] CIA carries out its core functions of foreign intelligence collection, production and use of intelligence sources and methods, including the extent of [the] CIA's intelligence interest in a particular subject matter."  *Id.*  Thus, the defendant asserts that it should be permitted to file an *in camera* classified declaration "to avoid damage to the national security and to [the] CIA's functions," while also ensuring that the court has the information

---

[5]       The plaintiff's concern as to the absolute lack of responsive material provided by the defendant is addressed in the court's discussion on the segregability of the responsive material(s).  *See infra* Part III.B.4.b.

necessary to conduct a meaningful review of its actions in response to the plaintiff's FOIA request. *Id.* ¶ 4.

The Circuit has acknowledged that an *in camera* review "deprives the FOIA requester of an opportunity to present his interpretation of the withheld documents." *Quinon*, 86 F.3d at 1228. Nevertheless, "[i]n a limited range of security cases, it is simply not possible to provide for orderly and responsible decisionmaking about what is to be disclosed, without some sacrifice to the pure adversary process." *Hayden*, 608 F.2d at 1385.

The Circuit has held that if a public record, after having been developed to its full extent, is insufficient for the district court to rule on the lawfulness of the agency's nondisclosure, then a "[district] court may accept classified affidavits [i]n camera." *Id.* at 1384. In *Hayden*, the district court allowed for *in camera* review of a classified affidavit detailing why requested documents could not be released under FOIA. *Id.* at 1383. Relying on that review, the district court granted summary judgment to the agency. *Id.* In affirming the district court's ruling, the Circuit noted that it was "appropriate to receive affidavits [i]n camera rather than in public" in circumstances where the district court "could reasonably find that public itemization and detailed justification would compromise legitimate secrecy interests." *Id.* at 1385.

Although the court is sensitive to the plaintiff's concerns regarding the limitations to the adversarial process that result from *in camera* filings, the court is persuaded that there is a reasonable chance of harm to both national security and the CIA if any additional information is revealed on the public record. *See Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (deferring to the agency's assertions in holding that the information could cause serious damage to the national security); 2d Dimaio Decl. ¶¶ 3-4. Here, the CIA indicates that

> revealing even the number of CIA originated records responsive to the Plaintiff's
> FOIA request, indeed whether the CIA located one or more than one record, and

additional information contained in a *Vaughn* index would disclose information about the nature and scope of the CIA's record material and necessarily would reveal the extent to which the CIA collected or did not collect information and/or prepared or did not prepare analysis on the events that are the subject of the Plaintiff's FOIA request, which in turn would reveal sensitive intelligence capabilities and interests (or lack thereof), in addition to a number of other pieces of information that could reasonably be expected to cause serious damage to the national security. [6]

1st Dimaio Decl. ¶ 8.

> **After reviewing the defendant's classified and unclassified declarations, the court concludes, as did the court in *Hayden*, that "public itemization and detailed justification" could compromise legitimate intelligence and national security interests.[7]**

*See Hayden*, 608 F.2d at 1385 (declining to require a *Vaughn* index because doing so would force the agency to reveal sensitive information). Accordingly, the court determines that the present case is one where "some of the interests of the adversary process are outweighed by the nation's legitimate interests in secrecy and orderly process," and declines to demand a more public record despite the fact that it must now do "without full benefit of adversary comment on a complete public record." *Hayden*, 608 F.2d at 1385.

---

[6]  The CIA also explains that for these same reasons a *Vaughn* index could not be prepared in this case. First Unclassified Dec. ¶ 8. Although the plaintiff does not specifically contest the defendant's failure to submit a *Vaughn* index, *see generally* Pl.'s Opp'n, the court notes that a *Vaughn* index is not necessary if it "could cause the very harm that [the exemption] was intended to prevent," *Linder v. Nat'l Security Agency*, 94 F.3d 694, 697 (D.C. Cir. 1996), or "where there are no responsive records to describe in a *Vaughn* index," *Casillas*, 672 F. Supp. 2d at 48.

[7]  The plaintiff also argues that the CIA is disingenuous in claiming national security concerns as justification for not providing a more detailed public declaration and refers the court to an allegedly more detailed public declaration that was provided in an unrelated, high-profile matter. Pl.'s Opp'n at 2 (discussing a declaration in "a case [that] deals with information about High Value Detainees held at Guantanamo Bay. . . and people the CIA claims have provided valuable information which helped prevent eminent terrorist attacks"). Because every case presents a unique set of facts and because the CIA is in a better position than this court to address what information can be revealed to the public in a declaration without causing harm to the national security, *see Military Audit Project*, 656 F.2d at 738, the court declines to make the type of comparative judgment that the plaintiff's argument invites.

Additionally, the court cannot meaningfully review the CIA's response to the plaintiff's request based on the current public record. The plaintiff concedes that the defendant's first unclassified declaration is "meaningless" and "mostly a collection of legal arguments and conclusory statements." Pl.'s Opp'n at 3. Because the court cannot meaningfully review the defendant's actions based on the current public record, *see Hayden*, 608 F.2d at 1384, and because the court is persuaded that the CIA cannot provide further information on the public record due to the reasonable chance that the release of such information may cause harm to the national security and the CIA's functions, *see* 2d Dimaio Decl. ¶ 3; *Military Audit Project*, 656 F.2d at 738, the court grants the defendant's motion for leave to file its *Vaughn* declaration *in camera*.

### B. The Court Grants the Defendant's Motion for Summary Judgment

#### 1. Legal Standard for Summary Judgment in FOIA Cases

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538 (D.C. Cir. 1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can be reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose

resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA. *Id.*; *Al-Fayed v. Cent. Intelligence Agency*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). An agency may meet this burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance. *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820 (fashioning what is now commonly referred to as a "*Vaughn* index").

The court may grant summary judgment to an agency on the basis of its affidavits if they:

> [(a)] describe the documents and the justifications for nondisclosure with reasonably specific detail; [(b)] demonstrate that the information withheld logically falls within the claimed exemption, and [(c)] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project*, 656 F.2d at 738.

## 2. The Defendant Conducted an Adequate Search

### a. Legal Standard for FOIA Adequacy of Agency Search

A requester dissatisfied with an agency's response to his FOIA request may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir.

1999). To prevail on summary judgment, "the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal quotations and citations omitted). An agency must search for documents in good faith, using methods that are reasonably expected to produce the requested information. *Valencia-Lucena*, 180 F.3d at 326 (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The principle issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. *Oglesby*, 920 F.2d at 67 n.13 (citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986)); *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996). The agency need not search every record in the system or conduct a perfect search. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *Meeropol*, 790 F.2d at 952, 956. Nor need the agency produce a document if "the agency is no longer in possession of the document [] for [a] reason that is not itself suspect." *SafeCard Servs.*, 926 F.2d at 1201.

Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Nation Magazine*, 71 F.3d at 890 (citing *Oglesby*, 920 F.2d at 68). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.*, 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.* If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia-Lucena*, 180 F.3d at 326 (internal quotations and citations omitted).

## b.  The Defendant's Search Was Reasonable

The CIA asserts that its search was reasonably calculated to uncover all relevant documents responsive to the plaintiff's amended FOIA request.  Def.'s Mot. at 6.  The plaintiff counters that the CIA's search was inadequate as evidenced by its failure to disclose certain documents that had been made available to the plaintiff by the Department of State and which, according to the plaintiff, "were sent by the Department of State to CIA."  Pl.'s Opp'n at 3.  The plaintiff argues that the availability of the Department of State's documents, as well as "the fact that it took action by a federal court to force [the] CIA to produce any response to plaintiff's request," demonstrates that the CIA's bad faith.  *Id.* at 3 n.2.  Finally, the plaintiff accuses the CIA of unilaterally narrowing his request, i.e. the plaintiff sought "documents" and alleges the CIA searched only for "reports."  *Id.* at 3.  Although the plaintiff acknowledges that he accepted the amended request, he argues that at the time "he understood [it] to be a narrowing quite different than the eviscerating construction now advanced."  *Id.* at 4.

In its reply, the CIA argues that the plaintiff "agreed to narrow the scope of his FOIA request such that it plainly covers only records that originate with the CIA," and that pursuant to this narrower request, the CIA searched only CIA reports.  Def.'s Reply at 4.  Thus, the CIA concludes that the non-production of Department of State records does not "impugn the adequacy of the CIA's search."  *Id.* at 5.

As a preliminary matter, the court must decide whether the plaintiff's initial or amended FOIA request is controlling.  An agency can ask a FOIA requestor to clarify or narrow an overly broad request.  *See Nation Magazine*, 71 F.3d at 891-92 (holding that an agency is not required to undertake a search that is so broad as to be unduly burdensome); *Kenney v. U.S. Dep't of Justice*, 603 F. Supp. 2d 184, 188 (D.D.C. 2009) (noting that an agency can ask a requester to

clarify the scope of a FOIA request "where a request is not specific enough to allow 'a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort'" (quoting *Dale v. Internal Revenue Servs.*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002))).

Here, the CIA explained to the plaintiff that it "could not process the first part of [his] request – [seeking] CIA *documents* about events in Andijan, Uzbekistan, from 2004-2006 – as presented, given its lack of specificity." Def.'s Mot., Ex. B. (emphasis added). The CIA offered, however, to search for the second part of the plaintiff's initial request, seeking "CIA *reports* relating to the violence of May 2005 and its aftermath, as well as subsequent trials and evaluation of refugees." *Id.* (emphasis added). The plaintiff, despite his demonstrated ability to utilize the CIA's administrative appeal process, accepted the CIA's offer to search for the documents responsive to the narrowed request. Def.'s Mot., Ex. C.; *see also* Am. Comp. ¶ 8. Had the plaintiff, as he now claims, wanted more than just "CIA reports," he was entitled to reject the CIA's offer and appeal its decision to reject his initial FOIA request. *See Wilson v. U.S. Dep't of Transp.*, 2010 WL 3184300, at *10 (D.D.C. Aug. 11, 2010) (holding that the plaintiff, who agreed to narrow his FOIA request "cannot now argue that he meant something else"); *Kenney*, 603 F. Supp. 2d at 189 (D.D.C. 2009) (stating that the "[p]laintiff cannot allege that the agency failed to produce responsive records, when the records he now identifies falls outside the scope of his appropriately narrowed request"). Thus, the court is not persuaded that the CIA unilaterally "rewrote" and "twisted" the plaintiff's request and will, accordingly, refer to the amended FOIA request in evaluating whether the defendant's search was reasonable.

The court determines whether the CIA's search for documents was adequate by evaluating "the reasonableness of the [the agency's] effort in light of the *specific* request.'"

*Larson v. U.S. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (quoting *Meeropol v. Meese*, 252 U.S. App. D.C. 381, 790 F.2d 942, 956 (D.C. Cir. 1986) (emphasis added)). The CIA was "not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. U.S. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996); *but cf. Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (requiring that an agency expand the scope of its search if during the search the agency discovers information suggesting the existence of documents elsewhere). The CIA's failure, moreover, to produce a particular document does not necessarily undermine the adequacy of a search. *Lasko v. U.S. Dep't of Justice*, 2010 WL 3521595, at *1 (D.C. Cir. Sept. 3, 2010) (holding that the failure to produce particular documents does not undermine the adequacy of a search (citing *Wilbur v. Cent. Intelligence Agency*, 355 F.3d 675, 678 (D.C. Cir. 2004))).

Here, the CIA construed the plaintiff's request for "CIA reports" as a request for "records that originate with the CIA." Def.'s Reply at 4. This interpretation was reasonable under the circumstances. The plaintiff's initial request for "information or records on all CIA documents . . . including any CIA reports" indicates that the plaintiff was mindful to distinguish between records and reports. *See* Am. Compl. ¶ 6. Nonetheless, the plaintiff agreed to limit the scope of the search from "information or records on all CIA documents" to "CIA reports." *See* Def.'s Mot., Ex. C. Both the "four corners of the [amended] request" and the plaintiff's demonstrated understanding as to the distinction between reports and records, support the conclusion that the CIA reasonably interpreted the plaintiff's amended request as one for "records that originate with the CIA" and not for all agency records. *See Kowalczyk*, 73 F.3d at 389 (declining to interpret a request as requiring all agency records where the plaintiff had not "clearly state[d] that he want[ed] all agency records on [the] subject, i.e. regardless of their location," and the agency had

reasonably interpreted the request to be for records in a specific office); *id.* (noting that an "agency may reasonably interpret a request to be for records in a specific office," and "upon discovering that it has other responsive records elsewhere, it may reasonably infer that the requester already has those records, is seeking them through a separate request, or, for whatever reason, does not want them").[8]  The court, moreover, recognizes that it has the statutory authority to enjoin agencies "from withholding agency records," 5 U.S.C. § 552(a)(4)(B), and that the Department of State documents obtained by the CIA are considered the CIA's "agency records." *McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1109 (D.C. Cir. 1983).  As discussed, however, the plaintiff here does not request the CIA's agency "records," instead limiting his request to CIA "reports."  Thus, the court concludes that the defendant reasonably construed the plaintiff's amended request and that the CIA's nondisclosure of the Department of State documents is neither a "positive indication of overlooked materials" nor evidence of bad faith.  *Cf. Valencia-Lucena*, 180 F.3d at 326 (stating that summary judgment was not appropriate where the reasonableness of the agency's search was in doubt "particularly in view of well defined requests and positive indications of overlooked materials" (internal quotations and citations omitted)).

The plaintiff's argument that the CIA's bad faith is evidenced by "the fact that it took action by a federal court to force [it] to produce any response to plaintiff's request,"  Pl.'s Opp'n at 3 n.2., also lacks merit.  The CIA states that it "accepted the [plaintiff's] modified request on 14 January 2009, completed a search, and mailed a letter to the [p]laintiff notifying him of the results on 24 March 2009."  1st Dimaio Decl. ¶ 5.  "[I]nitial delays in responding to a FOIA

---

[8]        Indeed, here it was plainly reasonably for the CIA to infer that the plaintiff was seeking the Department of State records through a separate request because the plaintiff did, in fact, make such a separate request.  Pl.'s Opp'n at 3.

request are rarely, if ever, grounds for discrediting later affidavits by the agency." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Meeropol*, 790 F.2d at 952 (D.C. Cir. 1986)); *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 772 (D.C. Cir. 1981); *see also Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 355 (D.C. Cir. 1978) (stating that "in view of the well-publicized problems created by the statute's . . . time limits for processing FOIA requests and appeals, the CIA's delay alone cannot be said to indicate an absence of good faith"); *Am. Fed'n of Gov't Emp.v. Broad. Bd. of Governors*, 2010 WL 1976747, at *7 (D.D.C. May 18, 2010) (rejecting "the plaintiffs' arguments that defendant's failure to produce any documents until after litigation commenced is evidence of bad faith or an inadequate search"). The court notes that approximately ten months elapsed between when the plaintiff claims to have submitted his amended request to the CIA in March 2008, and when this court ordered this case stayed *as requested* by the parties' joint motion in January 2009.[9] *See generally* Joint Mot. to Stay. In March 2009, three months after the parties requested a stay, the CIA provided the plaintiff with a final response. Def.'s Mot., Ex. B. Neither the ten month period from when the plaintiff's submitted his amended request to the stay of judicial proceedings nor the three month period that the CIA took to produce a response are alone sufficient to indicate that the defendant acted in bad faith. *See Iturralde*, 315 F.3d at 315.

Having concluded that neither bad faith nor contradictory evidence is present, the court need not question the veracity of the classified declaration, including the details concerning the adequacy of the search provided therein. *See Hayden*, 608 F.2d at 1386 (holding that a district court need not inquire into the veracity of a classified affidavit unless the information it provides

---

[9]     Due to the large volumes of requests submitted to federal agencies, "FOIA itself explicitly contemplates the possibility of a stay at judicial proceedings at the district court level." *Electronic Privacy Info. Ctr. v. U.S. Dept. of Justice*, 2005 U.S. Dist. LEXIS 18876, at *7 (D.D.C. Aug. 31, 2005).

is insufficient or contradicted by the record, or there is evidence of bad faith on behalf of the agency). The CIA's classified affidavit, moreover, has provided sufficient details and facts to support that its search was reasonable under the amended request. *See generally* Classified Dimaio Decl.; *see also Nation Magazine*, 71 F.3d at 890 (requiring that an agency's affidavit set forth sufficient information for the court to determine whether a search is reasonable (citing *Oglesby*, 920 F.2d at 68)); *cf. Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (holding that an agency declaration was insufficient because it provided only "a general explanation of how the agency responds to all FOIA requests" and did not "'identify[] the terms searched or explain[] how the search was conducted'" (quoting *Oglesby*, 920 F.2d at 68)). Accordingly, the court concludes that the CIA has demonstrated "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine*, 71 F.3d 885, 890 (D.C. Cir. 1995).

### 3. Exemption 1

#### a. Legal Standard for Exemption 1 Withholding

Exemption 1 of FOIA exempts from mandatory disclosure matters that are (1) "specifically authorized under criteria established by an Executive order to be kept secret in the interests of national defense or foreign policy" and (2) "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Information "must be classified in accordance with the procedural criteria of the governing Executive Order as well as its substantive terms" in order to be properly withheld under Exemption 1. *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 483 (D.C. Cir. 1980). Under Executive Order 12,958, an agency may not authorize information to be kept secret unless, *inter alia*, the "disclosure of the information reasonably could be expected to result in damage to the national security." Exec. Order No. 12,958, 60 Fed. Reg. 19,825 (Apr.

17, 1995).  An agency that withholds information pursuant to this exemption bears the burden of justifying its decision.  *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987) (citing 5 U.S.C. § 552(a)(4)(B)).

Courts review challenges to an agency's decision to withhold information *de novo*.  *King*, 830 F.2d at 217; 5 U.S.C. § 552(a)(4)(B).  The court should conduct an *in camera* review of the withheld information if the agency's affidavits are insufficient to make the *de novo* determination.  *Hayden*, 608 F.2d 1381, 1384-88 (D.C. Cir. 1979).  In reviewing an agency's invocation of an exemption, the court must consider that in enacting FOIA, Congress aimed to strike a balance "between the right of the public to know what their government is up to and the often compelling interest that the government maintains in keeping certain information private, whether to protect particular individuals or the national interest as a whole."  *American Civil Liberties Union v. U.S. Dep't of Justice*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152-53 (1989)).

The court is to "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record."  *Military Audit Project*, 656 F.2d at 738 (deferring to the agency's assertions in holding that the information could cause serious damage to the national security); *see also Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982).  This is especially true "in a national security case, in which the agency possesses necessary expertise to assess the risk of disclosure," *Schlesinger v. Cent. Intelligence Agency*, 591 F. Supp. 60, 67 (D.D.C. 1984), and judges "lack the expertise necessary to second-guess . . . agency opinions," *Halperin v. Central Intelligence Agency*, 629 F.2d 144, 148 (D.C. Cir. 1980) (deferring to the agency's opinion and holding that certain CIA affidavits provided ample evidence to show potential harm under a limited *de novo* review).  If the court finds that the agency's affidavits are

insufficiently detailed, it should deny summary judgment. *Campbell*, 164 F.3d at 31 (remanding to the district court to allow the FBI to further "justify" its Exemption 1 claim because its declaration failed to "draw any connection between the documents at issue and the general standards that govern the national security exemption"), *remanded to* 193 F. Supp. 2d 29, 38 (D.D.C. 2001) (holding that a declaration was insufficient by merely concluding, without further elaboration, that "disclosure of [the] information could reasonably be expected to cause serious damage to national security"); *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1180 (D.C. Cir. 1996) (rejecting certain *Vaughn* indices as insufficient because agencies must itemize each document and adequately explain "the connection between the information withheld and the exemption claimed"); *Oglesby*, 920 F.2d at 66 n.12 (noting the detail required in public *Vaughn* affidavits, especially in regard to an agency's obligation to segregate and release nonexempt material).

### b. The Defendant Properly Invoked Exemption 1

The defendant argues that it justifiably withheld information pursuant to Exemption 1 because it followed the procedural and substantive requirements set forth in Executive Order 12,958. Def.'s Mot. at 6-8. The plaintiff counters that "there are myriad documents almost certainly in the CIA's possession, such as translation of public trials held in the aftermath of the violence and translations of local media reports of the violence and ensuing trials, which are not rightly classified." Pl.'s Opp'n at 4.

The court has reviewed the classified and unclassified declarations to determine whether the CIA satisfied the procedural and substantive requirements in withholding the information under Exemption 1. *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 483 (D.C. Cir. 1980) (noting that proper classification requires that both procedural and substantive requirements be met).

Procedurally, the unclassified declaration demonstrates that the classification of withheld information has met the conditions outlined under Section 1.2(a) of the Executive Order. 1st Dimaio Decl. ¶ 14. More specifically, the defendant determined that (1) the withheld information is classified by "an original classified authority," (2) the withheld information is owned by, produced by, and under the control of the U.S. Government, (3) the withheld information "falls within one or more of the categories in Section 1.4 of Executive Order 12958, and (4) disclosure of the withheld information "reasonably could be expected to result in damage to the national security." *Id.* ¶¶ 9, 14-16; *see* 5 U.S.C. § 552(b)(1). Thus, the court concludes that the CIA has met the procedural requirements needed to invoke Exemption 1.

Substantively, the CIA's classified declaration describes in sufficient detail why the withheld information "logically falls" within one of the classification categories outlined in Section 1.4 of Executive Order. *Hayden*, 608 F.2d at 1387; *see generally* Classified Dimaio Decl. The court need not inquire "further into [the classified declaration's] veracity," having already determined that neither contradictory evidence nor bad faith was present. *See supra* Part III.B.2.b; *Hayden*, 608 F.2d at 1387 (holding that the veracity of an agency's affidavit need not be questioned if no bad faith or contradictory evidence is found).

Although the plaintiff contends the CIA erred in classifying certain public documents or documents relating to public events, he only provides a broad and speculative claim that "myriad documents" exist which he believes should not be classified. Pl.'s Opp'n at 4. Such "purely speculative claims about the existence and discoverability of other documents" are insufficient to show that the CIA has incorrectly withheld classified information. *See SafeCard Servs., Inc.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). The court, moreover, is required to defer to the CIA's judgment with regard to the reasonable expectation that the disclosure of the withheld

information, even "seemingly innocent information" that has "already been made public," could result in damage to the national security. *See Phillippi v. Cent. Intelligence Agency*, 655 F.2d 1325, 1330 (D.C. Cir. 1981) (declining to hold that "revelation of seemingly innocent information . . . is required under FOIA" because the information had already been made public and deferring instead to "the well-documented and specific affidavits of the CIA to the contrary"); *Military Audit Project*, 656 F.2d at 738 (rejecting the argument that "an agency's rationale for nondisclosure is inherently implausible simply because the information at issue might already be a matter of public knowledge"). Thus, the court is not persuaded by the plaintiff's claim that public information was improperly classified. Accordingly, the court concludes that the CIA has met both the procedural and substantive requirements of 5 U.S.C. § 522(b)(1) and properly invoked Exemption 1.[10]

### 4. The Defendant Has Satisfied the Segregability Requirement

#### a. Legal Standard for Segregability Requirement

FOIA mandates that "any reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). By 1977, it had "long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). The D.C. Circuit has made clear that "the 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Center for Auto Safety v. U.S. Envtl. Prot. Agency*, 731 F.2d 16, 21 (D.C. Cir. 1984). In fact, the segregability requirement is so essential to a FOIA inquiry that "it

---

[10]     The defendant also invokes Exemption 3, codified at 5 U.S.C. § 552(b)(3), as a basis for withholding information in response to the plaintiff's amended request. Def.'s Mot. at 9. Because the CIA seeks to withhold the same information under both Exemption 1 and Exemption 3, *see id.*, and because the defendant has properly invoked Exemption 1, the court does not consider whether the defendant properly invoked Exemption 3.

is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1210 (D.C. Cir. 1992) (quoting *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1979).

To demonstrate that the withholding agency has disclosed all reasonably segregable material, "the withholding agency must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987) (internal quotations omitted). The agency, however, is not required to provide so much detail that the exempt material effectively would be disclosed. *Mead Data*, 566 F.2d at 261. Furthermore, conclusory language in agency declarations that do not provide a specific basis for segregability findings by a district court may be found inadequate. *Animal Legal Def. Fund, Inc. v. U.S. Dep't of Air Force,* 44 F. Supp. 2d 295, 301 (D.D.C. 1999). The Circuit, though expressly disclaiming any attempt to provide "an encompassing definition of 'conclusory assertions,'" noted that "it is enough that where no factual support is provided for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987).

### b. The Agency Properly Segregated Exempt Material from Non-Exempt Material

The defendant argues that that the withheld information "is not appropriate for segregation and disclosure" because

[t]o disclose [even] the amount of [responsive] material . . . or the date(s) of the [responsive], would reveal sensitive information. The disclosure of such

21

seemingly innocuous information would reveal, among other things, the nature and extent of the CIA's interest in, and/or its ability to gather information regarding, the subjects of Plaintiff's FOIA request.

Def.'s Mot. at 11 (quoting 1st Dimaio Decl. ¶ 22 (alterations in original)).  The defendant provides additional explanations for the sensitivity of this information in Dimaio's classified declaration.  *See generally* Classified Dimaio Decl.  The plaintiff counters that he "has sufficient evidence to show that [the d]efendant . . . did not attempt to segregate exempt from non-exempt materials," referring to the Department of State documents discussed above.  Pl.'s Opp'n at 3; *see also supra* Part III.B.2.b (discussing Department of State documents).

As a preliminary matter, the court has already concluded that the Department of State documents did not fall in the scope of the plaintiff's amended FOIA request.  *See supra* Part III.B.2.b.  Therefore, contrary to the plaintiff's position, the Department of State documents are not evidence that would demonstrate that the defendant "did not attempt to segregate exempt from non-exempt materials."  See Pl.'s Opp'n at 3.

The court must decide, nonetheless, whether the defendant was justified in not providing any materials in response to the amended request.  *Morley*, 508 F.3d at 1123 (stating that the court has an affirmative duty to consider whether an agency has released all reasonably segregable information).  Ordinarily, an agency correlates each exemption it claims with a particular portion of the document to which the exemption applies.  *Hall v. Cent. Intelligence Agency*, 668 F. Supp. 2d 172 (citing *Schiller*, 964 F.2d at 1209-10).  Here, however, the defendant states that giving *any* information regarding the results of its search, including

even the number of CIA originated records responsive to the Plaintiff's FOIA request . . . [or] whether the CIA located one or more than one record . . . would reveal the extent to which the CIA collected or did not collect information and/or prepared or did not prepare analysis on the events that are the subject of the Plaintiff's FOIA request, which in turn would reveal sensitive intelligence capabilities and interests (or lack thereof).

1st Dimaio Decl. ¶ 8.  The classified declaration provides further details as to why the CIA

cannot segregate portions of the responsive records.  *See generally* Classified Dimaio Decl.

This Circuit has acknowledged that individual pieces of intelligence information, "much

like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the

individual piece is not of obvious importance itself." *Fitzgibbon v. Cent. Intelligence Agency*,

911 F.2d 755, 763 (D.C. Cir. 1990) (citing *Gardels v. Cent. Intelligence Agency*, 689 F.2d 1100,

1106 (D.C. Cir. 1982).  Through its unclassified and classified declarations, the defendant

provides a sufficiently detailed justification for the defendant's determination that there is no

segregable material because all of the information is exempt.  1st Dimaio Decl. ¶¶ 8-10; 2d

Dimaio Decl. ¶¶ 3-4; *See generally* Classified Diamio Decl.  Accordingly, the defendant has

satisfied its burden of establishing that no portion of the withheld documents can be segregated

and released to the plaintiff. [11]  *Juarez*, 518 F.3d at 61.

### 5.  Discovery is Not Warranted

The plaintiff requests discovery under Federal Rule of Civil Procedure Rule 56(f)[12]

arguing that discovery is necessary to so he can learn "why the CIA is treating Plaintiff's request

differently than far more sensitive requests from others."  Pl.'s Opp'n, Decl. of Pl.'s Counsel ¶ 3.

Additionally, the plaintiff seeks to depose the CIA's declarant concerning

> the basis for his personal knowledge as to the contents of his declaration, the
> CIA's construction of [the plaintiff's] request, the scope and steps taken to search

---

[11]    The court is also not required to inspect the withheld information *in camera* to determine the
segregability of the requested information because "[t]he Agency's rationale for nondisclosure . .
. applied to any and all information from the requested documents."  *Hayden*, 608 F.2d at 1388.

[12]    Under Rule 56(f), a court "may deny a motion for summary judgment or order a continuance to
permit discovery if the party opposing the motion adequately explains why, at that timepoint, it
cannot present by affidavit facts needed to defeat the motion." *Strang v. U.S. Arms Control &
Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989); *Londrigan v. Fed. Bureau of
Investigation*, 670 F.2d 1164, 1175 (D.C. Cir. 1981).

for documents by the defendant and the fact and extent of the CIA's possession of information from third parties that it has summarized and withheld, if any.

*Id.* ¶ 2. The defendant responds that discovery would be inappropriate because "the CIA has already provided the plaintiff with all of the information that it can . . . [and t]o provide any additional information would be to disclose classified information." Def.'s Reply at 6.

Generally, "[d]iscovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Schrecker v. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003); *see also Judicial Watch, Inc. v. Dep't. of Justice*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002) (noting that "[d]iscovery is not favored in lawsuits under the FOIA"). Only if the agency has not undertaken an adequate search for responsive documents is discovery appropriate. *Schrecker*, 217 F. Supp. 2d at 35. Discovery is not warranted "when it appears that discovery would only . . . afford [the plaintiff] an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits." *Military Audit Project*, 656 F.2d at 751-52 (internal quotations omitted); *see also Broaddrick v. Executive Office of the President*, 139 F. Supp. 2d 55, 63-64 (D.D.C. 2001). Where an agency's affidavits regarding its search are sufficient, the judge has broad discretion to forgo discovery. *Meeropol*, 790 F.2d at 960-61; *see also Schleeper v. U.S. Dep't of Justice*, 1999 WL 325515, at *1 (D.C. Cir. April 30, 1999) (per curiam) (upholding lower court's denial of discovery). Even if an agency's affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct the agency to supplement its affidavits. *Judicial Watch*, 185 F. Supp. 2d at 65.

As has already been discussed, *see supra* Part III.B.2.b., the CIA did not act in bad faith. *See Hall*, 668 F. Supp. 2d 172, 196 (D.D.C. 2009) (denying discovery because the court could

not infer from the record before it that the agency had acted in bad faith). Additionally, the plaintiff requests to depose the declarant to determine "the basis of his personal knowledge." Pl.'s Opp'n, Counsel Decl. ¶ 3. Ordinarily, however, a declarant who holds a supervisory position overseeing FOIA requests is deemed to have personal knowledge of a search. *Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 814 (2d Cir.1994) (stating that "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy [the personal knowledge requirement of Federal Rule of Civil Procedure] 56(e)"); *see also Kay v. Fed. Commc'ns Comm'n,* 976 F. Supp. 23, 34 n.29 (D.D.C. 1997) (stating that "[g]enerally, declarations accounting for searches of documents that contain hearsay are acceptable"), *aff'd,* 172 F.3d 919 (D.C. Cir. 1998). Here, the declarant is the Information Review Officer for the National Clandestine Service of the CIA, 1st Unclassified Decl. ¶ 1, and thus, the court sees no reason for discovery to ascertain the declarant's personal knowledge of the search.

Lastly, the CIA has stated that "the only response [that it] can provide on the public record in this case is the general, 'no number, no list' declaration," because revealing anything more "could reasonably be expected to cause serious damage to the national security." Def.'s Mot., 1st Dimaio Decl. ¶ 8. In such a situation, the court need only review the CIA's declaration, *see Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1013 (D.C. Cir. 1974) (stating that "[w]hen the [a]gency's position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits which explain the [a]gency's refusal"), and if the court finds that "an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains," then discovery should be denied, *Casillas v. U.S. Dep't of Justice*, 672 F. Supp. 2d 45, 49 (D.D.C. 2009) (citing *Schrecker v. Dep't of Justice*, 217 F. Supp. 2d 29, 35

(D.D.C. 2002)).  Accordingly, the court denies the plaintiff's request for discovery.


## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment and grants leave to the defendant to file *in camera* its *Vaughn* declaration.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of September, 2010.


RICARDO M. URBINA
United States District Judge